UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
A.A.

                    Plaintiff,

        -against-

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.
------------------------------------------------------------------X

**ORDER**

**24-CV-7827 (JW)**

**JENNIFER E. WILLIS, United States Magistrate Judge:**

Plaintiff A.A. ("Plaintiff") brings this action pursuant to Section 205 (g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), for judicial review of the final decision of the Acting Commissioner of the Social Security Administration (the "Commissioner" or "Defendant"), via Administrative Law Judge Kimberly D. Schulz (the "ALJ" or "ALJ Schulz") denying Plaintiff's application for disability insurance benefits.

## BACKGROUND

### A. Procedural history

Plaintiff applied for benefits on November 22, 2022, alleging disability beginning January 11, 2021. Dkt. No. 14 (hereinafter "R. __") at 14.[1] Plaintiff's application was denied initially and on reconsideration. Id. She then requested a hearing before an Administrative Law Judge. R. 14.

---

[1] All references to page numbers within the SSA Administrative Record (Dkt. No. 14) are in accordance with the page numbers found at the bottom right corner of the page.

A hearing was held on November 20, 2023, before ALJ Schulz. R. 31–61. Plaintiff appeared with an attorney via telephone and testified. R. 33–53. The ALJ also heard testimony from Michael Smith, a vocational expert ("VE"). R. 53–61. On February 28, 2024, ALJ Schulz denied Plaintiff's application for disability benefits. R. 14–24. Plaintiff requested a review of ALJ Schulz's decision, and on August 15, 2024, the Appeals Council denied that request. R. 1.

Plaintiff commenced this action, by and through her counsel, by filing a complaint on October 15, 2024. Dkt. No. 1. On May 24, 2025, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. Dkt. Nos. 18–19. On May 1, 2025, the Commissioner filed a brief in opposition to the motion. Dkt. No. 20. Plaintiff did not submit a reply. The Court considers the motion fully briefed.

## B. Onset of the alleged disability

Plaintiff previously worked as an operating room attendant at Montefiore Hospital. R. 38–39. On January 11, 2021, she slipped at work while pushing an operating room bed. R. at 38–39. Plaintiff sustained several injuries including a crushed toe, fractured ankle, bruised hip, head and neck injury, lower back injuries, and a bilateral shoulder injury. R. at 43–44. Plaintiff stopped working after the accident.

## C. Relevant medical evidence

Plaintiff has had many medical visits and examinations, but the Court only summarizes the medical history relevant to the arguments set forth in the instant motion.

### a. Dr. Paz

On March 13, 2023, consultative examiner Dr. Manuel Paz completed an internal medicine examination on Plaintiff. R. 798–804. Dr. Paz reported bilateral shoulder pain and upper and lower back pain, which was "always present 10/10, sharp." R. 799. Plaintiff noted that her son helped her with activities such as cooking, cleaning, laundry, and shopping, and that she showered and dressed independently. R. 799.

Dr. Paz reported that Plaintiff was in no acute distress, used no assistive device, could walk on heels and toes, and demonstrated a normal stance. R. 800. Plaintiff's spine showed some reduced range of motion, but she had no joint deformity, heat, swelling, or tenderness. R. 800–801. Plaintiff had full (5/5) strength in all upper and lower extremities, and normal and symmetrical deep tendon reflexes in both the upper and lower extremities, with no sensory deficits. R. 800–801. Additionally, Plaintiff's fine motor skills in the hands were intact, with strong bilateral grip strength. R. 801. Her prognosis was "fair." R. 801.

Dr. Paz's report concluded that upon examination, Plaintiff "has moderate limitations for bending, lifting, carrying, prolonged sitting, prolonged standing, prolonged walking, pushing, pulling, reaching overhead, climbing stairs, kneeling, and crouching." R. 802.

### b. Dr. Fenig

Plaintiff met with pain management specialist Dr. Arielle Fenig every two months beginning in February 2021, approximately one month after Plaintiff's injury.

R. 805–809, 829–832.  On July 10, 2023, Dr. Fenig examined Plaintiff and reported that Plaintiff "[i]s cleared to work light duty with no exertion more than 10 pounds. No sitting or standing more than 10 –15 minutes, [and] [n]o walking more than a few minutes."  R. 809.

One week later, on July 18, 2023, Dr. Fenig performed a physical capacity evaluation on Plaintiff.  R. 829–832.  Dr. Fenig opined that Plaintiff could never lift/carry any items (even items weighing 0-5 pounds); could stand, walk, or sit for zero hours in an eight-hour workday; could sit three minutes without interruption; and required six unscheduled breaks during the day lasting three minutes.  R. 829– 830.  Dr. Fenig also reported that Plaintiff could never climb, bend, balance, stoop, kneel, crouch, crawl, reach (including overhead), or push/pull.  R. 832.  Plaintiff could, however, finger/handle/feel two-thirds or more of the time.  R. 832.

### c.  State Agency Review Consultants

#### i.  Dr. Randall

On April 10, 2023, non-examining state agency physician Dr. Randall completed a mental residual functional capacity assessment of Plaintiff.  R. 62–71. Dr. Randall reviewed Plaintiff's medical history and concluded that Plaintiff has "moderate limitations for bending, lifting, carrying, prolonged sitting, prolonged standing, prolonged walking, pushing, pulling, reaching overhead, climbing stairs, kneeling, and crouching."  R. 67.  Dr. Randall further concluded that Plaintiff could stand and/or walk for two hours and sit for six hours in an eight-hour workday.  R. 67.  Dr. Randall reported that Plaintiff could occasionally climb, stoop, crouch, and

crawl; and was limited in reaching in front, laterally, and overhead. R. 67. Based on this, Dr. Randall concluded that it was "reasonable to believe that [Plaintiff] would have a remaining capacity to perform a sedentary job with postural limitations and occasional use of bilateral arms in reaching in all directions including [overhead]." R. 70.

### ii. Dr. Wallace

After a request for reconsideration by Plaintiff, a second state agency non-examining physician named Dr. Wallace reviewed Plaintiff's records on June 23, 2023. R. 73–79. Dr. Wallace ultimately agreed with Dr. Randall's findings that Plaintiff's maximum sustained work capability was sedentary work. R. 79.

### D. ALJ Schulz's decision

On February 28, 2024, ALJ Schulz issued a decision denying Plaintiff's application for disability benefits. R. at 24. In reaching a decision, ALJ Schulz applied the standard five-step analysis. R. 14–24.

At step one, ALJ Schulz found that Plaintiff had not engaged in substantial gainful activity since January 11, 2021 (the alleged disability onset date) and meets the insured status requirements of the Social Security Act through March 31, 2026 (the date last insured). R. at 17.

At step two, ALJ Schulz concluded that Plaintiff's bilateral shoulder derangement, cervical and lumbar degenerative disc disease with accompanying radiculopathy, left toe (second middle phalanx) fracture and post traumatic

arthropathy, obesity, and headaches were severe impairments as defined under the Act.  R. at 17.

However, at step three, ALJ Schulz found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1.  R. at 17–18.

At step four, ALJ  Schulz determined that Plaintiff retained the residual functional capacity ("RFC") to perform less than the full range of sedentary exertion as defined in 20 CFR 404.1567 (a), with the following limitations: she can lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk 2 hours and sit 6 hours of an 8-hour workday, with normal breaks; she cannot climb ladders, ropes, or scaffolds; she cannot crawl, she can occasionally climb ramps and stairs, stoop, and crouch; she can frequently kneel; she can have no exposure to extreme bright lights like headlights, stage lights, or inspection lights, but normal home and office lighting is acceptable; she cannot be in concentrated exposure to respiratory irritants such as dust and fumes; and she is expected to be off task 10% of the workday due to her headaches.  R. at 18.  In reaching the RFC determination, ALJ Schulz discussed the persuasiveness of each medical opinion and considered Plaintiff's hearing testimony.  R. at 18–22.

ALJ Schulz found Dr. Paz's opinion that Plaintiff has "moderate limits for bending, lifting, carrying, prolonged sitting, standing, walking, pushing, pulling, climbing stairs, kneeling, and crouching" persuasive because it was supported by results of a consultative examination and "consistent with evaluation results from

6

[Plaintiff's] medical providers." R. 21.  However, ALJ Schulz concluded that Dr. Paz's opinion regarding overhead reaching was not persuasive because it was not supported by medical evidence in the record.  R. 21.

ALJ Schulz found Dr. Fenig's opinion partially persuasive.  For instance, Dr. Fenig's opinion that Plaintiff could lift and carry ten pounds, as endorsed by Plaintiff during some of her visits, was persuasive and supported by the results of Dr. Fenig's examinations and Dr. Paz's findings.  R. 21.  However, Dr. Fenig's opinion that Plaintiff can sit/stand no more than 15 minutes at a time and walk no longer than a few minutes at a time was "not supported by the objective medical evidence of record." R. 21.  In coming to this conclusion, ALJ Schulz noted several inconsistences with Dr. Fenig's own reports showing "5/5 strength in the upper extremities, normal gait, no use of assistive device, and strength 5/5 in the bilateral lower extremities."  R. 21. ALJ Schulz also noted that this finding was inconsistent with Dr. Paz's consultative findings, which found no acute distress, muscle strength 5/5 and intact sensation and reflexes.  R. 21.

Finally, ALJ Schulz found that Dr. Fenig's functional capacity evaluation on July 18, 2023, where she opined that Plaintiff could not lift any weight, could not stand or walk, could sit for 30 minutes a time, and required unscheduled breaks, was unpersuasive because it was not supported by Dr. Fenig's other reports and inconsistent with Dr. Paz's examination findings.  R. 21–22.

Further, ALJ Schulz concluded that the medical opinions of state agency review consultants Dr. Randall and Dr. Wallace—that Plaintiff was capable of

performing a range of jobs requiring no more than sedentary exertion—was persuasive because they were "supported by the overall evidence including assessments of [Plaintiff's] strength and range of motion." R. 22.

At step five, the ALJ concluded that Plaintiff could not perform her past relevant work as an operating room attendant. R. at 22. However, considering Plaintiff's age (44 on the alleged onset date), education (at least high school), work experience, and RFC, ALJ Schulz determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. at 22–23.

ALJ Schulz relied on VE Smith's testimony that an individual with sedentary exertion could work as a Ticket Counter (Dictionary of Occupational Titles ("DOT") code 219.587-010) with 6,278 positions in the national economy, an Information Clerk (DOT code 237.367-046), a job with 2,764 positions in the national economy, and Document Preparer (DOT code 249.587-018), a job with 15,628 positions in the national economy. ALJ Schulz noted that although VE Smith's testimony was not "entirely consistent" with the DOT, "there is a reasonable explanation for the discrepancy." R. 23. For instance, for Document Preparer roles, VE Smith testified that "the job is currently performed in a more modern way . . . because documents are not transferred to microfilm and instead, a scanner is now used" but that "this does not change the exertion, [specific vocational preparation], or job numbers for this job." R. 23. As such, ALJ Schulz concluded that Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. 24.

Therefore, ALJ Schulz found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between January 11, 2021 (the alleged onset date) and February 28, 2024 (the date of the ALJ's decision).  R. 24.

On August 15, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  R. 1.

## LEGAL STANDARD

### A. Standard of review

"It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999).  The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence.  See 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lamay v. Commissioner of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including

contradictory evidence and evidence from which conflicting inferences can be drawn." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996).

## B. Five-step sequential evaluation process

Under the Social Security Act, a claimant is disabled if they lack the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. at § 423(d)(2)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

See Rolon v. Commiss'r of Soc. Sec., No. 12 Civ. 4808 (AJN), 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014) (citing Shaw v. Chater, 221 F.3d 126, 132 (2d Cir.2000)); see also 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof during steps one through four and then the burden shifts to the Commissioner at step five. See Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. See Butts v. Barnhart, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## **DISCUSSION**

### **A. The ALJ's evaluation of medical opinions**

Plaintiff alleges that ALJ Schulz's RFC determination that Plaintiff can perform sedentary work with some additional limitations was in error because ALJ Schulz (1) failed to include Dr. Paz's limitations; (2) erred in her evaluation of the

medical opinion evidence; and (3) failed to assess Plaintiff's ability to perform work activities on a function-by-function basis.  The Court addresses each in turn.

### a.  Dr. Paz's opinion on Plaintiff's moderate limitations

Plaintiff contends that ALJ Schulz's RFC assessment failed to include Dr. Paz's opinion that Plaintiff "does not have the ability to perform sedentary work." Dkt. No. 19 at 14.  In support of this proposition, Plaintiff points to Dr. Paz's opinion that reflected "moderate limitations in bending, lifting, carrying, prolonged sitting, standing, walking, pushing, pulling, climbing stairs, kneeling, overhead reaching, and crouching." Id.; R. 21, 802.  Contrary to Plaintiff's assertion, this opinion is consistent with authority that "'moderate' limitations for standing, walking, sitting, and lifting are consistent with the ability to do light work."  Claudene M. v. Comm'r of Soc. Sec., No. 24 Civ. 7185 (GRJ), 2025 WL 1736588, at *5 (S.D.N.Y. June 23, 2025) (citing Jordan v. Comm'r of Soc. Sec., No. 16 Civ. 9634 (KHP), 2018 WL 1388527, at *10 (S.D.N.Y. Mar. 19, 2018) (collecting cases).  As such, the Court finds that ALJ Schulz's limitations regarding Plaintiff's "moderate limitations" were appropriately considered in her RFC assessment.

### b.  Evaluation of medical opinions

Plaintiff contends that ALJ Schulz erred in her evaluation of the medical opinions because (1) ALJ Schulz's determination that Dr. Fenig's opinion is inconsistent with Dr. Paz's statement was conclusory and (2) ALJ Schulz erred when relying on the opinions of Agency reviewers Dr. Randall and Dr. Wallace.  Dkt. No. 19 at 15–18.

Post 2017, ALJs no longer assign weight to a medical opinion, but instead "evaluate their persuasiveness based on the following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) any other factor that tends to support or contradict a medical opinion." Jackson v. Kijakazi, No. 20 Civ. 7476 (JLC), 588 F. Supp. 3d 558, 578 (S.D.N.Y. 2022) (cleaned up) (quoting 20 C.F.R. §§ 404.1520c(a)–(c), 416 920c(a)–(c)).  Supportability and consistency are the two most important factors when evaluating the persuasiveness of a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2).  While an ALJ may discuss the three remaining factors, it is not required.  Id.

"Although, in explaining RFC findings, an ALJ is not required to reconcile explicitly every conflicting shred of medical testimony, and is not precluded from crediting only portions of a medical opinion, the ALJ must explain why a medical opinion was not adopted if the RFC assessment conflicts with it." Caproni Brown v. Kijakazi, No. 22 Civ. 2452 (SDA), 2023 WL 4271535, at *10 (S.D.N.Y. June 14, 2023), report and recommendation adopted sub nom. Brown v. Kijakazi, No. 22 Civ. 2452 (JMF), 2023 WL 4267599 (S.D.N.Y. June 29, 2023) (cleaned up); see also Prosa v. Comm'r of Soc. Sec., No. 23 Civ. 8852 (GWG), 749 F. Supp. 3d 444, 454 (S.D.N.Y. 2024).

Here, ALJ Schulz found that Plaintiff retained the RFC to perform less than the full range of sedentary exertion with the following limitations: she can lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk 2 hours and sit 6 hours of an 8-hour workday, with normal breaks; she

cannot climb ladders, ropes, or scaffolds; she cannot crawl, she can occasionally climb ramps and stairs, stoop, and crouch; she can frequently knee; she can have no exposure to extreme bright lights like headlights, stage lights, or inspection lights, but normal home and office lighting is acceptable; she cannot be in concentrated exposure to respiratory irritants such as dust and fumes; and she is expected to be off task 10% of the workday due to her headaches.  R. at 18.

In reaching that conclusion, ALJ Schulz appropriately reconciled the various medical opinions.  While Plaintiff contends that ALJ Schulz's finding that Dr. Fenig's opinion is inconsistent with Dr. Paz's statement was conclusory, the Court disagrees and finds that ALJ Schulz adequately explained why Dr. Fenig's opinion was not adopted.  R. 21.  For instance, ALJ Schulz found Dr. Fenig's opinion that Plaintiff could sit/stand for no more than 15 minutes or walk no longer than a few minutes unpersuasive because it was not supported by the medical record, including Dr. Fenig's own reports, which showed normal gait, no use of assistive device, and strength 5/5 in the bilateral lower extremities.  R. 21.  Dr. Fenig's opinion was also inconsistent with the results of Dr. Paz's consultative examination, which found moderate limitations for, among other things, prolonged sitting and standing.  R. 21. ALJ Schulz further noted that Dr. Fenig's July 18, 2023 functional capacity evaluation was unpersuasive because she opined, among other things, that Plaintiff could not lift any weight, could not stand/walk, could sit for 30 minutes at time, and required unscheduled breaks.  R. 21–22. ALJ Schulz noted that these findings were inconsistent with Dr. Fenig's previous examination findings, including that "deep

14

tendon reflexes were equal in upper and lower extremities, no sensory deficits, strength five out of five in upper and lower extremities, hand and finger dexterity intact and grip strength five out of five bilaterally." R. 22.

Lastly, the Court finds that ALJ Schulz properly relied on the opinions of Agency reviewers Dr. Randall and Dr. Wallace, who opined that Plaintiff could perform a range of jobs requiring no more than sedentary exertion. Plaintiff argues that the Court erred when relying on these opinions because Dr. Randall and Dr. Wallace never examined Plaintiff and did not have access to Plaintiff's treatment records beyond June 2023, which included Dr. Fenig's notes and medical source statement. Dkt. No. 19 at 17. These arguments do not carry the day, as "'state agency physicians are qualified as experts in the evaluation of medical issues in disability claims,' and as such, 'their opinions may constitute substantial evidence if they are consistent with the record as a whole.'" Distefano v. Berryhill, No. 18 Civ. 721 (GWG), 363 F. Supp. 3d 453, 474 (S.D.N.Y. 2019) (quoting Leach ex rel. Murray v. Barnhart, No. 02 Civ. 3561 (RWS), 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004)). Here, although the Agency Reviewers did not examine records such as Dr. Fenig's medical source statement, ALJ Schulz's found Dr. Randall and Dr. Wallace's opinions were "consistent with the record as a whole" because they opined that Plaintiff had "moderate limitations for bending, lifting, carrying, prolonged sitting, prolonged standing, prolonged walking, pushing, pulling, reaching overhead, climbing stairs, kneeling, and crouching." R. 67. Ortiz v. Comm'r of Soc. Sec., No. 17 Civ. 4274 (GWG), 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018).

15

As such, the Court finds that ALJ Schulz did not err in determining that Plaintiff can perform sedentary work with some additional limitations.

### c. Function-by-function basis

Plaintiff also contends that a remand is necessary because ALJ Schulz did not provide a function-by-function assessment of her work-related abilities, as required under SSR 96-8p. However, it is well-settled in this Circuit that the lack of a function-by-function assessment does not warrant remand where, as here, it is clear that the ALJ reached a decision supported by substantial evidence. See O'Connell v. Kijakazi, No. 18 Civ. 10546 (AEK), 2021 WL 4480464, at *9 (S.D.N.Y. Sept. 30, 2021); Lombardozzi v. O'Malley, No. 23 Civ. 00073 (VR), 2024 WL 1119987, at *16 (S.D.N.Y. Mar. 14, 2024).

## B. Substantial evidence supports the ALJ's Step 5 determination

At the fifth step of the evaluation, the burden shifts to the Commissioner to show "a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [his or her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b). To determine whether such occupations exist in the national economy, the ALJ "will take administrative notice of reliable job information" listed in, among other publications, the Dictionary of Occupational Titles ("DOT"). Id. § 404.1566(d). Additionally, the Commissioner may elicit testimony from a vocational expert to prove there are jobs in the national economy that the claimant can perform. Id. § 404.1566(e).

Here, considering Plaintiff's age (44 on the alleged onset date), education (at least high school), work experience, and RFC, ALJ Schulz determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed as of the date last insured.  R. 23–24.

Plaintiff contends that ALJ Schulz erred by relying on the vocational expert's testimony, as that testimony was based on the DOT, which has not been updated since 1991 and is therefore outdated and unreliable.[2]  More specifically, Plaintiff asserts that the occupations of information clerk, ticket counter, and document preparer do not exist in character and or quantity as described by the vocational expert.  Dkt. No. 19 at 19–21.  And because they are obsolete, Plaintiff asserts that the vocational expert failed to identify jobs that exist in significant numbers in the national economy.  Id. at 21–22.

This argument has been consistently rejected by courts in this Circuit and Plaintiff cites no authority to the contrary.[3]  See Nicole Ann B. v. Comm'r of Soc. Sec., No. 25 Civ. 858 (GRJ), 2025 WL 3157743, at *7 (S.D.N.Y. Nov. 12, 2025); see also

---

[2] The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles* ("DOT"), which is published by the Department of Labor and provides detailed descriptions of the requirements for a variety of jobs. See 20 CFR § 416.966 (d)(1).

[3] Plaintiff cites Feeley v. Comm'r of Soc. Sec. in arguing that the job description for telephone quotation clerk is obsolete. No. 14 Civ. 4970 (KM), 2015 WL 3505512 (D.N.J. June 3, 2015).  However, the Court finds Feeley unhelpful.  Whereas in Feeley, the District of New Jersey court found that the vocational expert's testimony that "in 2012 there were approximately 970,000 telephone quotation clerk jobs available nationally, and 95,000 available regionally, seems dubious," vocational expert Smith here estimated 2,764 information clerk positions in the national economy, which appears reasonable to the Court.  Id. at *10.

Strong v. Berryhill, No. 17 Civ. 1286 (LGF), 2019 WL 2442147, at *6 (W.D.N.Y. June 12, 2019) (collecting cases); Johnson v. Saul, No. 19 Civ. 1222 (SALM), 2020 WL 6562402, at *11 (D. Conn. Nov. 9, 2020) ("[I]t is well settled that the DOT, despite not having been updated in more than 25 years, remains an accepted basis for vocational opinion according to the Commissioner's rules."); Harrison v. Comm'r of Soc. Sec., No. 20 Civ. 5282 (BCM), 2022 WL 1289357, at *11 (S.D.N.Y. Apr. 29, 2022).

Further, "[o]ther courts, including the Second Circuit in an unpublished decision, have declined to make a judicial finding as to whether an occupation is obsolete and have concluded that the ALJ is entitled to rely on the vocational expert's testimony." Chaderick v. Comm'r of Soc. Sec., No, 24 Civ. 258 (GRJ), 2024 WL 4767031, at *3 (S.D.N.Y. Nov. 13, 2024) (citing Bavaro v. Astrue, 413 F. App'x 382, 384 (2d Cir. 2011) ("We decline Bavaro's invitation to take judicial notice of the decline of the photofinishing industry and deem the position infeasible for her. A vocational expert testified to the existence of such jobs at the national and regional level. The ALJ was entitled to credit that testimony ... and we will not disturb that finding based upon Bavaro's conclusory proclamations to the contrary."); Angi W. v. Comm'r of Soc. Sec., No. 21 Civ. 0557 (CJS), 2023 WL 2595008, at *11 (W.D.N.Y. Mar. 22, 2023) ("[T]he Court would be loath to conduct its own analysis of job types and job availability and second guess the vocational expert's conclusions.").

Therefore, the Court finds that substantial evidence supports ALJ Schulz's Step 5 determination.

## CONCLUSION

For reasons discussed above, the Court ultimately finds ALJ Schulz's decision is supported by substantial evidence, and it must therefore be sustained under the deferential standard of review applicable here. See DuBois v. Comm'r of Soc. Sec., No. 20 Civ. 8422 (BCM), 2022 WL 845751, at *8 (S.D.N.Y. Mar. 21, 2022) ("To be sure, there is some evidence in the record that would support the conclusion that plaintiff had greater limitations than those the ALJ built into her RFC. But that is not the test."); Brault v. Soc. Sec. Admin., 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) ("The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would *have to conclude* otherwise.") (emphasis in original) (citation and internal quotation marks omitted).

Therefore, Plaintiff's motion for judgment on the pleadings is **DENIED** and the case is **DISMISSED**. The Clerk of the Court is respectfully directed to enter judgment in favor of the Commissioner and close this case.

**The Clerk of Court is respectfully requested to close Dkt. No. 18.**

SO ORDERED.

DATED:   New York, New York
         March 23, 2026

_Jennifer E. Willis_
JENNIFER E. WILLIS
United States Magistrate Judge

19